IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
                       DALLAS DIVISION

ROBERT DAVID CRAFT,              §
                                 §
     Plaintiff-counterdefendant, §
                                 § Civil Action No. 3:05-CV-2421-D
VS.                              §
                                 §
JOHN H. HARLAND COMPANY,         §
                                 §
     Defendant-counterplaintiff. §

                       MEMORANDUM OPINION
                           AND ORDER

    In this removed action alleging breach of contract and related claims arising from the nonpayment of sales commissions, defendant-counterplaintiff moves for partial summary judgment dismissing plaintiff's claims. The court concludes that plaintiff cannot establish that defendant breached the contract in question and that he cannot recover on the related claims. It therefore grants the motion and dismisses plaintiff's claims.

                                I

    Defendant-counterplaintiff John H. Harland Company ("Harland") provides payment, platform automation, core processing, analytical, and direct marketing services solutions to financial institutions throughout the United States.[1] Plaintiff-counterdefendant Robert David Craft ("Craft") worked as a salesman for Harland and, by

---

[1]The court recounts the disputed evidence in a light favorable to Craft as the summary judgment nonmovant and draws all reasonable inferences in his favor. *E.g., U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).

2004, was part of the team responsible for encouraging existing Harland clients to increase their use of Harland's direct marketing products and services. In this position, Craft earned a base salary of $88,068.00 in the year 2004. He was also entitled to a commission based on direct marketing sales revenue.

The commission portion of Craft's 2004 compensation was governed by two documents (collectively, the "2004 Contract"): Harland's "Company Incentive Compensation Plan" ("ICP") and the "FY2004 Quota Commitment Worksheet" ("Quota Worksheet") specifically created for Craft. The ICP provides, in relevant part, that "[e]ach Participant's *FY2004 Quota Commitment Worksheet* specifies the opportunities available to the Participant, as well as specific quotas and commission rates." D. App. 7 (italics in original). It further states that "[t]he Plan Year is January 1, 2004 to December 31, 2004." *Id.* at 9. The Quota Worksheet outlines the various commission rates for Craft's direct marketing commissions. It specifies that "Direct Marketing Commissions are paid quarterly on actual net revenue." D. App. 12.

On or around December 17, 2004, in his position as a Key Account Executive, Craft completed negotiations and executed a direct marketing contract between Harland and National City Bank ("National City"). Craft alleges that the terms of the contract required National City to pay at least $5 million per year for two years, and has language establishing penalties if it does not.

Harland maintains that this contract did not require National City to purchase any direct marketing products or services; instead, it established agreements with respect to pricing and discounts for any purchases that National City elected to make.

During 2004, the total direct marketing net revenue from clients assigned to Craft was $1,963,319.21. Included in this amount is the direct marketing actual net revenue that Harland received from National City during 2004, which equaled $1,368,232.92. Through the end of the third quarter of 2004, Craft had earned a direct marketing commission of over $29,304.58; his total direct marketing commission for 2004 equaled $48,131.62.

After the expiration of the FY 2004 Contract, Harland pressed Craft to sign a new, FY 2005 contract ("Proposed 2005 Contract") that would reduce his commission rate from 3% to .01%. Craft refused to sign the Proposed 2005 Contract without Harland's agreement that his existing commissions from 2004 and earlier (including the commissions from revenue received from National City), would not be affected. Harland refused to enter into this agreement, and Craft declined to sign the Proposed 2005 Contract. At the end of the first quarter of 2005, Craft was not paid any commission on the actual net value of the National City contract, or any other. In April 2005 Craft quit Harland and later brought this suit to recover unpaid commissions. He asserts claims for breach of contract, conversion, quantum meruit, violation of

chapter 61 of the Texas Labor Code, fraudulent misrepresentation, and fraudulent inducement.

Harland moves for partial summary judgment dismissing Craft's claims,[2] arguing that he cannot demonstrate that Harland failed to pay Craft commissions required by the 2004 Contract. It argues that because Craft's claims for conversion, violation of the Texas Labor Code, fraudulent misrepresentation and fraudulent inducement are based on Craft's allegation that he is owed additional commissions under the contract, these claims should also be dismissed because Harland paid all commissions required by the contract. It further argues that Craft's claim for quantum meruit should be dismissed because the services at issue are covered by an express contract.[3] Craft opposes the motion.

II

Because Harland will not have the burden of proof at trial on Craft's claims, it can meet its summary judgment obligation by pointing the court to the absence of evidence to support them. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once Harland

---

[2]Harland does not move for summary judgment on its counterclaim. Unless Harland seeks to dismiss the causes of action pleaded in the counterclaim, they remain on the docket to be tried.

[3]In support of its reply brief, Harland filed an evidence appendix. Because it did not first obtain leave of court, the court has not considered the reply appendix in deciding this motion. *See Dethrow v. Parkland Health Hosp. Sys.*, 204 F.R.D. 102, 104 (N.D. Tex. 2001) (Fitzwater, J.) (holding that party may not file summary judgment reply appendix without first obtaining leave of court).

does so, Craft must then go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Craft's failure to produce proof as to any essential element renders all other facts immaterial. *Edgar v. Gen. Elec. Co.*, 2002 WL 318331, at *4 (N.D. Tex. Feb. 27, 2002) (Fitzwater, J.) (citing *Celotex Corp.*, 477 U.S. at 323). Summary judgment is mandatory if Craft fails to meet his burden. *Little*, 37 F.3d at 1076.

III

Harland contends that it is entitled to summary judgment dismissing Craft's breach of contract claim.

A

Harland argues that Craft cannot demonstrate that it breached the 2004 Contract, because Harland paid Craft all the commissions he was due under that contract. Craft's Quota Worksheet provides: "Direct Marketing Commissions are paid quarterly on actual net revenue." D. App. 12. The ICP states under the heading "Effective Date":

>    1.   The Plan Year is January 1, 2004 to
>    December 31, 2004.
>
>    2.   The Plan supersedes all prior incentive
>    compensation plans or arrangements.
>
>    3.   The Administrators may extend the Plan
>    beyond the Plan Year.

*Id.* at 9. Harland maintains that under the clear terms of the 2004 Contract, Craft's commissions are computed based on "actual net revenue"; nowhere does the 2004 Contract provide for direct marketing commissions based on estimated future revenue. It posits that the commission rates were based on annual quotas, and the 2004 Contract was only for a term of one year. Subject to the Administrators' right to extend the Plan beyond one year (which Craft does not argue occurred), the 2004 Contract was effective only until December 31, 2004. Harland asserts that it paid Craft for all actual net revenue received in 2004 from clients assigned to Craft. During 2004, the total direct marketing revenue assigned to Craft was $1,963,319.21 and, from this figure, Craft was entitled to a commission of $48,131.62. Harland paid Craft this amount and argues that there was no 2004 direct marketing net revenue from National City or from any other source for which Craft was not paid a direct marketing commission. Harland argues that because Craft cannot identify any direct marketing revenue from the year 2004 that Harland received from a client assigned to Craft, and for which Craft was not paid a commission, Craft cannot establish that Harland breached its contract with Craft.

Craft responds that he is not seeking payment of the full, ultimate value of the National City contract as of its signing in December 2004. Rather, he is contending that, absent any new agreement, Harland must pay him a commission on direct marketing net revenue from National City in each subsequent quarter in which Harland realizes actual net revenue from the 2004 Contract with National City. Craft concedes that the commission terms of the 2004 Contract expired on December 31, 2004, but he argues that Harland is still obligated to pay commissions on accounts that generate actual net revenue until those contracts come to term. In support of this allegation, Craft points to his Quota Worksheet, which merely states that "Direct Marketing Commissions are paid quarterly on actual net revenue." D. App. 12. He argues that if there is any ambiguity in the contract terms, they are to be construed against Harland.

Craft next contends that under Texas law, a party commits a material breach of a contract when the injured party is deprived of the benefit it reasonably expected. He maintains that he expected Harland would pay him for the 2004 National City contract under the terms in effect when it was negotiated (i.e., the terms in the 2004 Contract). But instead of paying him the commission he expected, Harland attempted to force him to accept a new contract to supersede the 2004 Contract. Craft argues that the Proposed 2005 Contract would drastically cut his compensation; that he has not

Craft responds that he is not seeking payment of the full, ultimate value of the National City contract as of its signing in December 2004. Rather, he is contending that, absent any new agreement, Harland must pay him a commission on direct marketing net revenue from National City in each subsequent quarter in which Harland realizes actual net revenue from the 2004 Contract with National City. Craft concedes that the commission terms of the 2004 Contract expired on December 31, 2004, but he argues that Harland is still obligated to pay commissions on accounts that generate actual net revenue until those contracts come to term. In support of this allegation, Craft points to his Quota Worksheet, which merely states that "Direct Marketing Commissions are paid quarterly on actual net revenue." D. App. 12. He argues that if there is any ambiguity in the contract terms, they are to be construed against Harland.

Craft next contends that under Texas law, a party commits a material breach of a contract when the injured party is deprived of the benefit it reasonably expected. He maintains that he expected Harland would pay him for the 2004 National City contract under the terms in effect when it was negotiated (i.e., the terms in the 2004 Contract). But instead of paying him the commission he expected, Harland attempted to force him to accept a new contract to supersede the 2004 Contract. Craft argues that the Proposed 2005 Contract would drastically cut his compensation; that he has not

been paid a commission under either the 2004 Contract or the Proposed 2005 Contract; that by refusing Harland's new terms for 2005, he has apparently been required to work for free; and that he is at least entitled to be paid the actual amount of net revenue that Harland received from January 1, 2005 until he quit in April of 2005. Craft argues that the question "how much should Harland pay Craft for the 2004 National City contract" is a fact question for the jury.

Harland replies that Craft is seeking, under the terms of the 2004 Contract, to require that Harland pay him commissions for direct marketing revenue that Harland received in 2005, even though the 2004 Contract expired on December 31, 2004. It argues that the "paid quarterly on actual net revenue" language of the 2004 Contract means that commissions for 2004 direct revenue will be paid once per quarter until the contract terminates at the close of 2004. Harland maintains that there is no factual dispute for the jury; the 2004 Contract is not ambiguous, and therefore its meaning is determined by the court as a matter of law.

B

Under Texas law, the elements of a breach of contract claim are (1) the existence of a valid contract between plaintiff and defendant, (2) the plaintiff's performance or tender of performance, (3) the defendant's breach of the contract, and (4) the plaintiff's damage as a result of the breach. *Prime Prods.,*

*Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App. 2002, pet. denied). The parties do not dispute the existence of a valid contract or whether Craft performed under the agreement. Instead, they argue over whether Harland breached the 2004 Contract by refusing to pay Craft a commission on revenue received from City National *after* December 31, 2004.

"The meaning given to the language in a contract is . . . a question of law for the court." *Bank One, Tex., N.A. v. Stewart*, 967 S.W.2d 419, 432 (Tex. App. 1998, pet. denied) (citing *Snyder v. Eanes Indep. Sch. Dist.*, 860 S.W.2d 692, 696 (Tex. App. 1993, writ denied)). "Likewise, whether a party has breached a contract is a question of law for the court and not a question of fact for the jury." *Id.* (citing *Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex. App. 1996, writ denied)). In deciding whether the contract has been breached, the court must enforce the language in the contract as it is written by "looking at the objective intent as manifested by the language used, rather than interpreting it by attempting to divine the subjective intent of the parties." *Sulzer Carbomedics, Inc. v. Oregon Cardio-Devices, Inc.*, 257 F.3d 449, 457 (5th Cir. 2001) (citing *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 352 (5th Cir. 1996)). "If a contract is worded in such a manner that it can be given a definite or certain legal meaning, then it is not ambiguous." *Hitzelberger v. Samedan Oil Corp.*, 948 S.W.2d 497, 503-04 (Tex.

App. 1997, writ denied) (citing *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *R & P Enters. v. LaGuarta, Gavrel & Kirk*, 596 S.W.2d 517, 519 (Tex. 1980)).

C

The 2004 Contract explicitly provides that "[t]he Plan Year is January 1, 2004 to December 31, 2004." D. App. 9. Craft does not argue that the "Administrators . . . extend[ed] the Plan beyond the Plan Year." *Id.* The court therefore concludes, and neither party disputes, that the 2004 Contract expired by its terms on December 31, 2004.

Although Craft correctly points out that the provision that states, "Direct Marketing Commissions are paid quarterly on actual net revenue," *id.* at 12, does not specify that the quarterly payments will terminate upon the expiration of the Plan Year, a fair reading of the two documents that make up the 2004 Contract dictates this conclusion as a matter of law. The ICP contains the terms and conditions of the compensation system for calendar year 2004 at Harland. Although the ICP states that "[e]ach Participant's *FY2004 Quota Commitment Worksheet* specifies the opportunities available to the Participant, as well as specific quotas and commission rates," D. App. 7 (italics in original), the Quota Worksheet does not supersede the terms of the ICP. The ICP clearly provides that it expires on December 31, 2004, and it

- 10 -

states that the "premium commission rate will be in effect throughout the 2004 calendar year, concluding on December 31, 2004." *Id.* at 8.

Craft argues that "Harland is still obligated to pay commissions on accounts that generate actual net revenue until those contracts come to term." P. Br. 8. But he can point to no language in the 2004 Contract that requires this conclusion. The clear and unambiguous language of the 2004 Contract provides that Harland was obligated to pay Craft direct marketing commissions on actual net revenue received from National City during calendar year 2004, which is the Plan Year covered by the ICP. Harland was not required by contract to continue to pay Craft commissions on actual net revenue that Harland received from National City *after* the December 31, 2004 expiration of the 2004 Contract.

To the extent Craft bases his breach of contract claim on Harland's attempt to "force Craft to accept a new contract[ ] to supersede the FY 2004 contract," *id.*, the court also concludes that Harland did not breach its duties under the 2004 Contract. The ICP clearly provides, under the heading "Right to Amend the Plan," that "[t]he Company reserves the right to terminate or amend the Plan to any extent and in any manner at any time at the sole discretion and in the final judgment of the Administrators." D. App. 11. And because Craft has conceded that "the commission terms of the contract between Craft and Harland did expire on December 31,

2004," P. Br. 8, the court holds that changing Craft's commission rate from 3% to .01% did not breach the 2004 Contract.

Finally, the court addresses Craft's argument that because he expected Harland to pay him for the 2004 National City contract according to the terms of the 2004 Contract, Harland committed a material breach in attempting to change the commission rate once the 2004 Contract expired. Craft incorrectly states Texas law on this point, however. The case Craft cites, *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692-93 (Tex. 1994), provides:

> A fundamental principle of contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform. In determining the materiality of a breach, courts will consider, among other things, the extent to which the nonbreaching party will be deprived of the benefit that it could have reasonably anticipated from full performance. The less the non-breaching party is deprived of the expected benefit, the less material the breach.

Id. (citations omitted). In the present case, the court need not determine "the materiality of a breach," because it concludes that Harland has not breached the 2004 Contract. And it is clearly established that, once the court has determined that the contract is unambiguous, "its language must be enforced as written, looking at the objective intent as manifested by the language used, rather than interpreting it by attempting to divine the subjective intent of the parties." *Sulzer Carbomedics, Inc.*, 257 F.3d at 457 (citing

*Clardy Mfg. Co.*, 88 F.3d at 352). As explained above, the language of the 2004 Contract establishes that Harland did not have a duty to pay Craft a 3% commission on the National City contract after the 2004 Contract expired on December 31, 2004. Craft's subjective expectations are therefore irrelevant in determining whether Harland has breached the contract.

The court concludes as a matter of law that the 2004 Contract expired by its terms on December 31, 2004. Neither party disputes that Harland paid Craft the commissions he was due on revenue received from Craft's accounts through December 31, 2004. Under the terms of the 2004 Contract, Harland was not obligated to pay Craft commissions on revenue that Harland received after the expiration of the Plan Year. Accordingly, the court holds, as a matter of law, that Craft cannot establish that Harland breached the 2004 Contract, and Harland is entitled to summary judgment dismissing Craft's breach of contract claim.

IV

The court turns next to Craft's conversion claim.

A

Craft seeks to recover for conversion based on the allegation that he has the right to immediate possession of his commissions because he earned them under the Plan. He posits that by refusing to remit to him the payment of commissions, Harland exercised and continues to exercise control over Craft's property.

Harland moves for summary judgment, contending that Craft cannot establish that he is entitled to any commissions that he has not yet received. Craft responds that he does not need to show a contract, but only that he owns, legally possesses, or is entitled to the immediate possession of property. He argues that evidence shows that he performed work for Harland for which he was never paid, and that Harland thereby converted his commissions.

B

> To prove conversion under Texas law, a plaintiff must establish: (1) [he] owned, possessed, or had the right to immediate possession of the personal property at issue; (2) the defendant wrongfully exercised dominion or control over the property; and (3) the defendant refused the plaintiff's request to return the property.

*Port Elevator Brownsville v. Gutierrez*, 198 Fed. Appx. 362, 368 (5th Cir. 2006) (per curiam) (citing *Apple Imps. v. Koole*, 945 S.W.2d 895, 899 (Tex. App. 1997, writ denied)). The court has concluded above that Harland does not owe Craft any commissions on direct marketing revenue under the 2004 Contract. The evidence also establishes that Craft refused to sign the Proposed 2005 Contract, which would have entitled him to .01% of the direct marketing revenue during the first quarter of 2005. The court thus concludes that from January 1, 2005 until Craft resigned in April 2005, no commission contract existed between Harland and Craft. Accordingly, Harland is entitled to summary judgment dismissing Craft's conversion claim, because Craft has not adduced evidence

sufficient to permit a reasonable jury to find that he "owned, possessed, or had the right to immediate possession" of any commissions. *Id.*

V

Harland argues that it is entitled to summary judgment on Craft's Texas Labor Code claim because to prevail under § 61.015 of the Texas Labor Code, the plaintiff must establish that wages paid on commission are due according to the terms of an agreement between the employee and the employer. Section 61.015 provides that "[w]ages paid on commission and bonuses are due according to the terms of . . . an agreement between the employee and employer[.]" Tex. Lab. Code Ann. § 61.015(a) (Vernon 2006). Because the court has held above that Harland does not owe Craft any commission payments under the 2004 Contract, and because after the expiration of this contract, no new commission contract was formed between Craft and Harland, the court dismisses Craft's Texas Labor Code claim. The court concludes, as a matter of law, that Craft has not established that commissions are due according to the terms of an agreement between Craft and Harland.

VI

Harland also argues that it is entitled to summary judgment on Craft's claims for fraudulent misrepresentation and fraudulent inducement because Craft cannot establish that false representations were made. In his response, Craft does not address

Harland's argument and does not adduce evidence of false representations.

Harland correctly argues that, to recover for fraudulent misrepresentation or fraudulent inducement, Craft would have to present evidence that Harland made material false representations. *See, e.g., Fletcher v. Edwards*, 26 S.W.3d 66, 77 (Tex. App. 2000, pet. denied) (stating elements of fraudulent inducement claim, including material misrepresentation that was false); *Guillet v. Fairfield Fin. Group, Inc.*, 1996 WL 496912, at *4 (Tex. App. Aug. 29, 1996, writ denied) (not designated for publication) (citing *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992) (stating that elements of fraudulent misrepresentation include material misrepresentation that was false). Because Craft has not introduced such evidence, the court grants Harland's motion for summary judgment dismissing these claims.

VII

Finally, the court considers Craft's quantum meruit claim.

A

Craft alleges that he is entitled to recover in quantum meruit because he provided valuable services to Harland by negotiating and closing the direct marketing contract between Harland and National City, and Harland accepted the services with actual and constructive awareness that Craft expected payment for them.

Harland moves for summary judgment on this claim, arguing that

it is well settled under Texas law that a plaintiff cannot recover in quantum meruit if a valid express contract covers the services provided. Harland argues that Craft was obligated to perform the negotiating and closing of the contract between Harland and National City as part of his contractual obligations under the 2004 Contract; therefore, Craft cannot recover in quantum meruit for the services he rendered to Harland.

Craft responds that he received no compensation for National City (or any client) during the first quarter of 2005, because of his refusal to accept the new Proposed 2005 Contract. He maintains that if the 2004 National City contract is not covered under the 2004 Contract, then Harland has been unjustly enriched at Craft's expense, and a jury should be allowed to determine the value of the services he provided to Harland without payment.

B

"The existence of a valid, express contract that covers the subject matter of the parties' dispute generally precludes recovery under a quasi-contract theory." *Williams v. Colonial Bank, N.A.*, 199 Fed. Appx. 399, 403 (5th Cir. 2006) (per curiam) (citing *Fortune Prod. Co. v. Conoco, Inc.,* 52 S.W.3d 671, 684 (Tex. 2000)). Thus because an express agreement governed the terms of Craft's employment, he cannot recover in quantum meruit for the services he rendered in helping to boost direct marketing sales with National City. *See Vortt Exploration Co. v. Chevron U.S.A., Inc., 787*

S.W.2d 942, 944 (Tex. 1990) ("Generally, a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished."). He is limited to the compensation outlined in his employment agreement with Harland. *See First Union Nat'l Bank v. Richmont Capital Partners I, L.P.*, 168 S.W.3d 917, 931 (Tex. App. 2005, no pet.) (noting that, when a relevant contract exists, "there can be no recovery under a quasi-contract theory because parties should be bound by their express agreements").

Craft received a base salary for his work as a salesman for Harland. During calendar year 2004, Craft was entitled to commissions based on direct marketing revenue, but once the contract expired and Craft refused to sign the Proposed 2005 Contract, he was no longer entitled to commissions for his work and was relegated to his base salary alone. Regardless, when Craft actually secured the National City contract (the valuable service Craft provided to Harland), he was performing an obligation he owed Harland under the 2004 Contract and was compensated for his work under that contract. Accordingly, because the 2004 Contract expressly covered Craft's services in securing the National City contract, he cannot recover from Harland in quantum meruit.

* * *

Harland's February 1, 2007 motion for partial summary judgment is granted, and Craft's claims are dismissed with prejudice. Only the claims asserted in Harland's counterclaim remain for trial.

**SO ORDERED.**

August 14, 2007.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE